## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| THE BURLINGTON INSURANCE | § | |
| COMPANY, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-13-2844 |
| | § | |
| JC INSTRIDE, INC., *et al.*, | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

This insurance coverage case is before the Court on cross-motions for summary judgment. Plaintiff The Burlington Insurance Company ("TBIC") has filed an opposed Motion for Summary Judgment [Doc. # 26] ("TBIC's Motion"). JCI has also filed an opposed Motion for Partial Summary Judgment [Doc. # 30] ("JCI's Motion"). These motions are ripe for consideration.[1] Having considered the parties' briefing, the evidence of record, and the applicable legal authorities, the Court **grants** JCI's Motion and **denies** TBIC's Motion.

---

[1]   Defendant JC Instride, Inc. ("JCI") has filed a Response [Doc. # 27] to TBIC's Motion; Defendant Forest Oil Corporation ("Forest Oil," and together with JCI, "Defendants") has also filed a Response [Doc. # 28]; and TBIC has filed a Reply [Doc. # 29]. TBIC has also filed a Response [Doc. # 31] to JCI's Motion.

## I.   <u>BACKGROUND</u>

On or about December 24, 2012, Defendant Benjamin Malone ("Malone") began to work for Gordon Smith d/b/a Smith Enterprises ("Smith"), "a company which specializes in cleaning mud tanks at worksites for oil and gas drilling operations."  Plaintiff's Second Amended Original Petition [Exh. D to Doc. # 26] ("Malone Petition"), ¶ 4.1.  Smith contracted with JCI, a general contractor, to clean a mud tank in Jacksonville, Texas, belonging to Forest Oil.  *Id.*, ¶ 4.2.[2]  Malone arrived at Forest Oil's worksite that day, and JCI represented to him that the mud tank "contained water-based mud."  *Id.*, ¶ 4.4.  JCI did not inform Malone that the mud tank "contained large quantities of caustic materials."  *Id.*  Based on that representation, Malone entered the mud tank without proper safety equipment and waded in the mud.  *Id.*, ¶ 4.5.  Malone was exposed to the caustic materials, and as a result his clothing disintegrated, large portions of his skin became severely burned, and parts of his skin fell off.  *Id.*  Chad Horton ("Horton"), in an attempt to treat Malone, poured vinegar on Malone's burns, which exacerbated his injuries. *Id.*, ¶ 4.6.

On March 7, 2013, Malone sued Forest Oil, Lantern Drilling, Smith, and Horton in the 55th Judicial District Court of Harris County, Texas (the "Malone

---

[2]   JCI was retained by Forest Oil or Lantern Drilling Company ("Lantern Drilling") as a general contractor for the worksite.  Malone Petition, ¶ 4.2  The drilling rig was owned by Lantern Drilling, and Forest Oil operated the rig.  *Id.*

Action").   Malone amended his lawsuit on August 30, 2013, to name JCI as a defendant.   In relevant part, Malone alleges that JCI acted negligently by, among other things, failing to inform him of the caustic materials in the mud tank, failing to provide him with adequate safety equipment for use in the mud tank, failing to properly train and supervise its employees to respond to caustic burn injuries or other medical emergencies, and failing to hire, train, or supervise competent and qualified employees.   *Id.*, ¶ 5.1.   Malone initially asserted the same causes of action against Forest Oil and Lantern Drilling.   *See* Plaintiff's First Amended Original Petition [Exh. C to Doc. # 26], ¶ 5.1.   Malone subsequently settled his claims with Forest Oil.   *See* Malone's Objections and Answers to TBIC's First Set of Interrogatories [Exh. I to Doc. # 26], ¶ 4.   Malone dismissed with prejudice his claims against Forest Oil and Lantern Drilling on September 11, 2013.   *See* Motion to Dismiss with Prejudice [Exh. E to Doc. # 26].[3]

At the time of the accident, JCI was covered under an insurance policy issued by TBIC (the "Policy").[4]   Complaint [Doc. # 1], ¶ 13. Under the Policy, TBIC agreed to pay "those sums that [JCI] becomes legally obligated to pay as damages because of 'bodily injury' or 'property damages' to which [the] insurance applies."   Policy

---

[3]      The Malone Action remains pending.

[4]      The Policy term ran from April 6, 2012, to April 6, 2013.

[Exh. A to Doc. # 26], at App. 017.  TBIC also agreed in the Policy to defend JCI against a lawsuit seeking "those damages."  *Id.*  TBIC is not obligated, under the Policy, to defend JCI "against any suit seeking damages . . . to which [the] insurance does not apply."  *Id.*

The Policy excludes from coverage "bodily injury or property damages which would not have occurred in whole or in party but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time" (the "Pollution Exclusion").  *Id.*, at App. 051.  The Policy defines "Pollutants" as:

> [A]ny solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.

*Id.*, at App. 031.

Furthermore, the Policy's coverage extends to include "as an additional insured" any party with whom JCI "agree[s] . . . to name as an additional insured with respect to liability arising out [JCI's] ongoing operations performed on the project or service specified . . ."  *Id.*, at App. 045.  However, coverage does not extend to an additional insured for bodily injury to "an employee of any insured, or a person hired to do work for or on behalf of any insured . . . that arises out of and in the course of . . . performing duties related to the conduct of any insured's business . . ." (the "Employee Exclusion").  *Id.*

Around April 2013, Forest Oil requested that TBIC defend and indemnify it in the Malone Action as an "additional insured" under the Policy.  Declaration of Kelly DuBois [Exh. A to Doc. # 26] ("Dubois Decl."), at App. 01, ¶ 4.  TBIC denied that request.  *Id.*, at App. 01, ¶ 5.  Around September 2013, JCI requested that TBIC defend and indemnify it in the same action.  *Id.*, at App. 01, ¶ 6.  TBIC agreed to defend JCI under a reservation of rights.  *Id.*, at App. 01, ¶ 7.  Around that time, Forest Oil (together with JCI) again requested that TBIC indemnify it in the Malone Action, a request which TBIC again denied.  *Id.*, at App. 01, ¶ 8.

On September 26, 2013, TBIC filed the instant action against JCI, Forest Oil, and Malone, seeking a declaratory judgment that it has no duty to defend or indemnify JCI or Forest Oil in the Malone Action.[5]

## II.    SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th

---

[5]    TBIC names Malone a defendant in this lawsuit only "to ensure that any declaration of no coverage is binding on him as well as the insureds under the TBIC Policy."  Complaint, ¶ 28.

Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002).  Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex*, 477 U.S. at 322-23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The moving party, however, need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).  The moving party may meet its burden by pointing out "'the absence of evidence supporting the nonmoving party's case.'" *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir. 1992)).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial.  *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted).  "An issue is material if its resolution could

affect the outcome of the action.  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the court reviews the facts and inferences to be drawn from them in the light most favorable to the non-moving party.  *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003).  The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (holding that unverified pleadings do not "constitute competent summary judgment evidence").  Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008).  Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (citation and internal quotation marks omitted).  In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

The Court may make no credibility determinations or weigh any evidence, and must disregard all evidence favorable to the moving party that the jury is not required to believe.  *See Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010) (citing *Reaves Brokerage Co.*, 336 F.3d at 412-413).  The Court is not required to accept the non-movant's conclusory allegations, speculation, and unsubstantiated assertions which are either entirely unsupported, or supported by a mere scintilla of evidence. *Id*. (citing *Reaves Brokerage*, 336 F.3d at 413).  Affidavits cannot preclude summary judgment unless they contain competent and otherwise admissible evidence. *See* FED. R. CIV. P. 56(c)(4); *Love v. Nat'l Med. Enters.*, 230 F.3d 765, 776 (5th Cir. 2000); *Hunter-Reed v. City of Houston*, 244 F. Supp. 2d 733, 745 (S.D. Tex. 2003).

Finally, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).  "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *See id.* (internal citations and quotations omitted).

## III.   **DUTY TO DEFEND**

### A.   **Legal Standard**

"The duty to defend means the insurer will defend the insured in any lawsuit that alleges and seeks damages for an event potentially covered by the policy." *Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 252-53 (5th Cir. 2011).  An insurer owes its insured a duty to defend "if a plaintiff's factual allegations potentially support a covered claim." *Zurich Amer. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 490 (Tex. 2008) (citing *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church,* 197 S.W.3d 305, 310 (Tex. 2006)).  Whether the insurer owes a duty to defend is a question of law for the Court to decide.  *Ooida Risk Retention Group, Inc. v. Williams*, 579 F.3d 469, 471-72 (5th Cir. 2009).  When faced with a coverage dispute, the Court must give effect to the intention of the parties as that intention is expressed in the insurance policy itself.  *See Ideal Lease Serv., Inc. v. Amoco Prod. Co.*, 662 S.W.2d 951, 953 (Tex. 1983).

In deciding whether an insurer has a duty to defend, the Court must follow the "eight-corners rule"—that is, the duty to defend is determined by considering only the plaintiff's pleadings in the underlying lawsuit and the policy language. *Zurich*, 268 S.W.3d at 491.  The focus is on the factual allegations in the underlying complaint, not on the legal theories.  *See id.* at 495 (citing *Farmers Tex. County Mut. Ins. Co. v.*

*Griffin*, 955 S.W.2d 81, 82 (Tex. 1997)).  The Court is required to "resolve all doubts

regarding the duty to defend in favor of the duty" and to "construe the pleadings

liberally."  *Id.* at 491.  "If a complaint potentially includes a covered claim, the

insurer must defend the entire suit."  *Id.*

The insured bears the burden of showing that the claim against it is potentially

within the policy's affirmative grant of coverage.  *Primrose Operating Co. v. Nat'l*

*Am. Ins. Co.*, 382 F.3d 546, 552-53 (5th Cir. 2004); *New York Life Ins. Co. v.*

*Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir. 1996).  If the insurer relies on the

policy's exclusions to deny coverage, the burden shifts to the insurer to prove the

exclusion applies.  *Primrose,* 382 F.3d at 553; *New Hampshire Ins. Co. v. Martech*

*USA, Inc.*, 993 F.2d 1195, 1199 (5th Cir. 1993).  If the insurer is successful, the

burden shifts back to the insured to show that an exception to the exclusion brings the

claim potentially within the scope of coverage under the insurance policy.  *Primrose,*

382 F.3d at 553.

"In assessing whether the allegations in a complaint fall within the scope of an

exclusion, a reviewing court must interpret the complaint liberally and construe the

exclusion narrowly, resolving any ambiguity in favor of the insured."  *City of College*

*Station, Tex. v. Star Ins. Co.*, 735 F.3d 332, 337 (5th Cir. 2013).  "If the insured

proffers a reasonable interpretation of the exclusion favorable to coverage, a

reviewing court *must* accept it, even if the insurer proffers an interpretation negating coverage that is more reasonable or a more accurate reflection of the parties' intent." *Id.* at 337-38 (emphasis in original) (internal quotations omitted).

## B.   Analysis

Defendants have shown that Malone's claims in the Malone Action fall within the Policy's "affirmative grant of coverage." Specifically, Malone's injuries occurred during the coverage period. Moreover, Malone suffered "bodily injuries" and sues Defendants for damages resulting from those injuries. *See* Policy [Exh. A to Doc. # 26], at App. 017. Thus, TBIC owes Defendants a duty to defend against Malone's claims unless an exclusion or another exception in the Policy relieves it of that duty.

### 1.   Forest Oil

In deciding whether TBIC owes Forest Oil a duty to defend as an additional insured, the Court must consider: "(1) whether [Forest Oil] qualifies as an additional insured under the policy, and (2) whether, under Texas's strict eight-corners rule, the facts alleged in the underlying [Malone Action] are sufficient to trigger [TBIC's] duty to defend [Forest Oil]." *Gilbane Building Co. v. Admiral Ins. Co.*, 664 F.3d 589, 595 (5th Cir. 2011). Forest Oil "bears the burden on each of these issues." *Id.*

TBIC concedes that Forest Oil's contract with JCI technically qualifies it for coverage under the Policy as an "additional insured." *See* TBIC's Motion [Doc.

# 26], at 4 ("The Policy contained an Automatic Additional Insured Endorsement which made Forest [Oil] an additional insured with respect to liability arising out of JCI's ongoing operations.").  TBIC contends, however, that it has no duty to defend Forest Oil for two reasons.  First, TBIC argues that JCI was not mentioned in Malone's Original Petition, and Forest Oil was thus never "triggered" as an additional insured.  *Id.*, at 12-15.  Second, TBIC argues that Malone's injuries are excluded from coverage with respect to Forest Oil because they occurred while Malone was working on behalf of JCI.  *Id.*, at 15-16.

> The Policy provides that insurance coverage extends:
>
> [T]o include as an additional insured any person(s) or organization(s) with whom you agree, by virtue of a written construction or service contract, written construction or service agreement or permit (all of these hereinafter called Contract), that qualifies as an "insured contract" as defined by the policy, to name as an additional insured with respect to liability *arising out of your ongoing operations performed on the project or service specified in the contract*, including acts or omissions of the additional insured in connection with the general supervision of such operations.

Policy [Exh. A to Doc. # 26], at App. 045 (emphasis added).  TBIC argues that because Malone's Original Petition did not mention JCI or its "ongoing operations performed on the project or service," Forest Oil cannot have been triggered as an additional insured under an "eight corners" analysis.  Malone's First Amended Petition, however, included claims against both JCI and Forest Oil.  *See* First

Amended Petition [Exh. C to Doc. # 26], ¶¶ 2.2, 2.6, 5.1-5.5.  Malone filed that

petition on August 30, 2013, and did not move to dismiss his claims against Forest

Oil until September 11, 2013.  *See id.*; Motion to Dismiss with Prejudice [Exh. E to

Doc. # 26]. In his First Amended Petition, Malone alleged that Forest Oil "contacted

and retained Defendant JCI as a general contractor," and further alleged, among other

things, that Forest Oil or JCI negligently failed to inform him about the caustic

materials in the mud tank.  *See* First Amended Petition [Exh. C to Doc. # 26], ¶¶ 4.2-

4.4, 5.1.  Thus, Malone's First Amended Petition stated allegations that were "with

respect to liability arising out of [JCI's] ongoing operations performed on the project

or service specified in the contract," *i.e.*, JCI's agreement to serve as a general

contractor for Forest Oil's Jacksonville, Texas, oil well.  Malone's allegations in his

First Amended Petition therefore triggered TBIC's duty to defend Forest Oil in the

Malone Action.

TBIC relies on *Gilbane* to support its argument, but that case is inapposite.  In

*Gilbane*, the Court of Appeals held that the insurer (Admiral) had no duty to defend

an additional insured (Gilbane) because the "allegations in the pleadings [did] not

implicate" the fault of the insured (Empire).  *Gilbane*, 664 F.3d at 599.  The Court of

Appeals "limited its review to the face of the petition" and concluded that the

underlying litigation did not "affirmatively allege any facts implicating the negligence

of . . . Empire." *Id.*  Here, in contrast, Malone's First Amended Petition asserted

negligence claims against both JCI and Forest Oil, and asserted numerous facts that

implicated both JCI's and Forest Oil's fault.  Nothing in *Gilbane* limits the Court's

review to only Malone's Original Petition; indeed, the *Gilbane* Court itself reviewed

a "Third Amended Petition" in assessing whether Admiral owed Gilbane a duty to

defend as an additional insured.  *See id.* at 598.  Because Malone has "affirmatively

alleged" facts implicating both JCI's and Forest Oil's negligence, *id.* at 599, TBIC's

duty to defend Forest Oil as an additional insured was triggered.

TBIC further argues that it has no duty to defend Forest Oil "because the Policy

expressly excludes coverage to an additional insured based on liability arising from

bodily injury to a person hired to work on behalf of *any* insured."  TBIC's Motion,

at 15 (emphasis in original).  The Policy includes the following exclusion:

> With respect to the insurance afforded to these additional insureds, the
> following additional exclusions apply:
>
> The insurance does not apply to any "bodily injury" to:
>
> 1. An "employee" of any insured, or a person hired to do
>    work for or on behalf of any insured or a tenant of any
>    insured, that arises out of and in the course of:
>
>    a. Employment by any insured; or
>
>    b. Performing duties related to the conduct of any
>       insured's business; or

> 2. The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph 1. above.

These exclusions apply:

> 1. Whether an insured may be liable as an employer or in any other capacity; and

> 2. To any obligation to share damages with or repay someone else who must pay damages because of the injury.

Policy [Exh. A to Doc. # 26], at App. 045 (the "Employee Exclusion").

The Court agrees with Plaintiff that the Employee Exclusion requires denial of coverage to Forest Oil in this case. Malone alleges that he was employed by Smith, and that JCI hired Smith to clean Forest Oil's mud tank. *See* Malone Petition, ¶ 4.2 ("Upon information and belief, Lantern Drilling and/or Forest Oil contacted and retained Defendant JCI as a general contractor *who hired Defendant Smith Enterprises* to clean a mud tank located at Forest Oil's well . . .") (emphasis added). Thus, Malone, by virtue of his employment through Smith, was "hired to do work for or on behalf of" JCI, the insured. The work Malone performed arose in the course of JCI's performance of its contract with Forest Oil and while "performing duties related to" JCI's business as a general contractor for Forest Oil. Accordingly, the Employee Exclusion excludes coverage to Forest Oil as an "additional insured" under the Policy, and TBIC has no duty to defend Forest Oil against Malone's claims in the

Malone Action.  *See Atlantic Cas. Ins. Co. v. Gonzalez*, 402 F. App'x 953, 955-56 (5th Cir. 2010) (affirming summary judgment in favor of insurer and holding that insurer owed no duty to defend because alleged injuries arose from defendant's services "on behalf of" insured).

### 2.    JCI

TBIC contends that it owes JCI no duty to defend because the injuries Malone asserts in the Malone Action are excluded from coverage by the Pollution Exclusion.[6] As noted, the Policy's Pollution Exclusion excludes from coverage any injury "which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time." Policy [Exh. A to Doc. # 26], at App. 051.  "[A]s long as a 'pollutant' is emitted through one of the enumerated mechanisms and causes bodily injury, the exclusion applies to bar coverage."  *Nautilus Ins. Co. v. Country Oaks Apartments Ltd.*, 566 F.3d 452, 457 (5th Cir. 2009).

In his Petition, Malone alleges that he suffered "bodily injury" after he entered Forest Oil's mud tank, waded in the drilling mud, and came in contact with "large quantities of caustic materials."  Malone Petition, ¶¶ 4.4-4.5.  TBIC contends that the

---

[6]    The Court notes that TBIC also raises the Pollution Exclusion as a bar to coverage for Forest Oil.  The Court's conclusions regarding the Pollution Exclusion apply equally to Forest Oil.

Pollution Exclusion applies in this case because the "caustic materials" were "pollutants" that were "dispersed" in the mud.  Defendants do not dispute that the caustic materials qualify as "pollutants" under the Policy.  Rather, Defendants argue that Malone's Petition cannot fairly be read to allege that his injuries resulted from caustic materials being "dispersed" (or emitted through any "enumerated mechanism") in the mud.

Plaintiff has not met its burden to show that the Pollution Exclusion bars coverage in this case.  "To disperse a pollutant means to break it up and scatter it about."  *Zaiontz v. Trinity Universal Ins. Co.*, 87 S.W.3d 565, 573 (Tex. App.–San Antonio 2002, pet. denied) (citing MERRIAM WEBSTER DICTIONARY 223 (1994)).[7] Malone does not allege that caustic materials were "dispersed" in the mud in the tank. Rather, Malone alleges that the "mud tanks contained large quantities of caustic materials" and that, as he was wading in drilling mud, he was "expos[ed] to the caustic materials."  *Id.*  In other words, Malone alleges that he entered the mud tank,

---

[7]     *See also* 4 THE OXFORD ENGLISH DICTIONARY 812 (2d ed. 1989) ("to cause to separate in different directions"); WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 653 (1976) ("to cause to break up and go in different ways"); THE RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE–THE UNABRIDGED EDITION 414 (1966) ("to drive or send off in various directions").

and while inside the tank came into direct contact with the caustic materials.[8]  Malone does not allege that the caustic component of or in the mud was dispersed or emitted. Likewise, Malone does not allege how the caustic materials wound up in the mud or the mud tank.  Malone's Petition thus cannot be read to allege that his injury necessarily resulted from "dispersal" of caustic materials (*i.e.*, a "pollutant").  TBIC's argument that "[Malone's] allegations make clear that [the caustic materials] would not have injured Malone unless they were dispersed throughout the mud in which he was wading" is a gloss on the Petition not rooted in Malone's actual allegations and are rejected.

Malone's Petition also cannot be read to state that the caustic materials "dispersed onto [Malone's] clothing and person."  TBIC's Motion, at 11.  As noted, Malone only states that he entered the tank, waded in the mud, and was thereby "exposed" to the caustic materials.  One fair reading of Malone's Petition is that Malone suffered his injuries as a result of his movement into the mud which resulted in direct contact with the caustic materials.  There is no indication from Malone's Petition that the caustic materials "broke up and scattered" onto Malone's clothing or person prior to his injuries.

---

[8]    Malone is unclear whether the mud itself was the "caustic material."  Even so, the result here remains the same.

The cases TBIC cites in support of its Motion are distinguishable from the circumstances of this case.  The cited cases generally involved pollutants that the plaintiffs in the underlying actions had explicitly alleged, or had unquestionably implied, were emitted through one of those policies' enumerated mechanisms.  *See Nautilus Ins. Co.*, 566 F.3d at 457 ("The only way that carbon monoxide could accumulate in Schencks's apartment is if it was first emitted from her furnace.  The normal emission of carbon monoxide from an apartment furnace falls within the plan meaning of the terms 'discharge,' 'disperse,' 'seep,' and 'release.'"); *Noble Energy, Inc. v. Bituminous Cas. Co.*, 529 F.3d 642, 647 (5th Cir. 2008) (noting that plaintiff in underlying litigation had alleged that "hazardous, harmful substances were released . . ."); *Zaiontz v. Trinity Universal Ins. Co.*, 87 S.W.3d 565, 573 (Tex. App.–San Antonio 2002, pet. denied) (holding that allegations fell within exclusion because plaintiff had alleged "he was injured when he used foggers to 'spray' the Smoke and Odor eliminator into the interior of the plane" and thus alleged "he was injured by the 'discharge,' 'dispersal,' or 'release'" of the pollutant).[9]  Not so here.

---

[9]     The Court notes that the Pollution Exclusion can apply even when a pollutant is emitted through an enumerated mechanism and remains within a confined area.  *See, e.g.*, *Zaiontz*, 87 S.W.3d at 472.  That issue, however, is not before the Court because Malone's allegations in the underlying action can be read that the pollutant here was not emitted under one of the mechanisms enumerated in the Policy's Pollution Exclusion.

TBIC also relies on *United National Insurance Company v. Hydro Tank, Inc.*, 497 F.3d 445 (5th Cir. 2007).[10]   That case is superficially similar to the one at bar—there too, workers were injured while cleaning mud tanks, and their employer sought insurance coverage which the insurer asserted was barred by a policy exclusion identical to the Pollution Exclusion here.   The workers in *Hydro Tank*, however, had alleged that they "were overcome by [hydrogen sulfide] fumes and fell face-first into the sludge," from which they suffered "severe brain and cardio-pulmonary damage."   *Id.* at 447.   Emission via an enumerated mechanism was not at issue.   Instead, the *Hydro Tank* decision dealt with another issue tied to the policy exclusion—namely, whether the plaintiff in the underlying action alleged an injury caused by a pollutant.   *See id.* at 450-51; *United National Insurance Company v. Hydro Tank, Inc.*, 525 F.3d 400, 401-03 (5th Cir. 2008).   *Hydro Tank*, in other words, does not dictate a different result here.

Where a plaintiff's allegations "potentially support a covered claim," the insurer has a duty to defend its insured.   *Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 368 (5th Cir. 2008) (quoting *GuideOne Elite Ins. Co. v.*

---

[10]   TBIC cites extensively to *Hydro Tank*. *See* TBIC's Motion, at 10-11.   But as TBIC itself recognizes, *see id.* at 10, the language it quotes was superseded and replaced by different language after rehearing.   *United National Insurance Company v. Hydro Tank, Inc.*, 525 F.3d 400 (5th Cir. 2008).   The first *Hydro Tank* case is therefore relevant only to the extent it was not amended by the panel's superseding language.

*Fiedler Rd. Baptist Church*, 197 S.W.3d 305, 307 (Tex. 2006)). "Doubts are resolved in the insured's favor . . . [and] [a]llegations are read liberally in favor of the insured." *Id.* at 369. In the present case, because Malone's allegations fall within the Policy's "affirmative grant of coverage," TBIC has the burden of proving that the Pollution Exclusion bars coverage of Malone's injuries. TBIC has failed to meet that burden. Accordingly, TBIC must defend JCI in the Malone Action.[11]

## IV.   **DUTY TO INDEMNIFY**

In contrast to the duty to defend, "the duty to indemnify means the insurer will pay all covered claims and judgments against the insured." *Colony Ins. Co.*, 647 F.3d at 253. In Texas, the duty to indemnify is distinct from the duty to defend. *Id.* (citing *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 821-22 (Tex. 1997)). Unlike the duty to defend, "the duty to indemnify is triggered by the actual facts establishing liability in the underlying suit, and whether any damages caused by the insured and later proven at trial are covered by the terms of the policy." *Id.* "If any ambiguity exists, exceptions and limitations in a policy are construed strictly against the insurer." *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 529 (5th Cir.

---

[11]   Because the Court concludes that the Pollution Exclusion does not bar coverage to JCI, the Court does not reach JCI's argument that Malone's allegations involve "separate and independent causation." JCI's Response [Doc. # 27], at 5-7; JCI's Motion [Doc. # 30-1], at 8-10.

2004).

Generally, the duty to indemnify is determined "when the underlying liability case is concluded." *Nautilus Ins. Co.*, 566 F.3d at 458.  Even if an insurer owes no duty to defend, "it may still have a duty to indemnify" an insured.[12]  *D.R. Horton-Texas, Ltd. v. Markel Int'l Ins. Co., Ltd.*, 300 S.W.3d 740, 744 (Tex. 2009).  This is because "the facts adduced at trial might differ from the allegations, and thus, a duty to indemnify could be shown notwithstanding the absence of a duty to defend." *Colony Ins. Co.*, 647 F.3d at 254.  If, however, it is impossible that the set of facts alleged in the complaint "could be transformed by proof of any conceivable set of facts into an [event] covered by the insurance policy," then a court may rule on the duty to indemnify before the underlying litigation concludes. *D.R. Horton-Texas*, 300 S.W.3d at 745.

The Court concludes that it is premature to decide whether TBIC has a duty to indemnify either JCI or Forest Oil.  Malone's case against JCI remains pending.

---

[12]    TBIC states that the Court may rule on its duty to indemnify claim because "the same reasons that negate the duty to defend under the pollution exclusion will also negate the duty to indemnify."  Reply, at 5.  In support of this position, TBIC cites to *Farmers Texas County Mutual Insurance Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997).  But the *D.R. Horton-Texas* Court specifically limited *Griffin* to its facts.  *See D.R. Horton-Texas*, 300 S.W.3d at 744 ("[T]he holding in *Griffin* was fact-specific and cannot be construed so broadly.").  The Texas Supreme Court there reiterated that the two duties are distinct and that "the existence of one [duty] does not necessarily depend on the existence or proof of the other." *Id.* at 745.

While the Court concludes, based on the Policy language and the Malone Petition, that TBIC has no duty to defend Forest Oil as an additional insured, other facts may be shown during litigation of the Malone Action that may dictate a different result on the question of TBIC's indemnification obligations.   The Court cannot decide indemnification issues until completion of the Malone Action.  Accordingly, TBIC's Motion is denied on the indemnification issue regarding both JCI and Forest Oil in the Malone Action.

## V.      CONCLUSION AND ORDER

For the reasons stated, it is hereby

**ORDERED** that Plaintiff The Burlington Insurance Company's Motion for Summary Judgment [Doc. # 26] is **DENIED**.  It is further

**ORDERED** that Defendant JC Instride, Inc.'s Motion for Partial Summary Judgment [Doc. # 30] is **GRANTED**.  It is further

**ORDERED** that Plaintiff TBIC is required to defend Defendant JCI in the Malone Action.  It is further

**ORDERED** that Plaintiff TBIC is not required to defend Defendant Forest Oil Corporation in the Malone Action.  It is further

**ORDERED** that this case is **STAYED AND ADMINISTRATIVELY CLOSED** pending final resolution of the Malone Action.  It is further

**ORDERED** that on or before **September 30, 2014, and every 90 days thereafter**, the parties shall file a joint status report advising the Court of the status of the Malone Action.

SIGNED at Houston, Texas, this  7th  day of **July, 2014**.

Nancy F. Atlas
United States District Judge